# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM VÁZQUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13-cv-04749 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| J.P. MORGAN CHASE BANK, N.A., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Vázquez brought this lawsuit against Defendant J.P. Morgan Chase Bank, N.A. ("J.P. Morgan") alleging fraudulent misrepresentation and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, in connection with the servicing of Vázquez's home mortgage loan. J.P. Morgan has now filed a motion to dismiss Vázquez's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction (the "Motion") (Dkt. No. 27). For the reasons explained below, the Motion is denied.

## BACKGROUND

In April 2011, J.P. Morgan filed a foreclosure action (the "Foreclosure Action") against Vázquez in the Circuit Court of DuPage County, Illinois (the "State Court") alleging that Vázquez defaulted on his mortgage.[1] On March 11, 2013, the State Court entered a Judgment of Foreclosure and Sale against Vázquez. After the State Court denied his motion to reconsider, Vázquez appealed the decision to the Illinois Appellate Court. The Appellate Court then

---

[1] For purposes of the Motion, the Court takes judicial notice of the court filings in the Foreclosure Action. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997) (in resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record without converting the motion to a motion for summary judgment).

dismissed Vázquez's appeal for lack of appellate jurisdiction, finding that the Foreclosure Action would not be ripe for appeal until the sale of Vázquez's property was confirmed. To date, the State Court has not entered an order confirming the sale of the property.

On July 1, 2013, while the Foreclosure Action was pending, Vázquez filed a *pro se* complaint in this Court against J.P. Morgan and the law firm Fisher & Shapiro, LLC, asserting causes of action for fraudulent misrepresentation or concealment and violations of the ICFA. On July 10, 2013, the Court *sua sponte* dismissed the complaint, without prejudice, for lack of subject matter jurisdiction because the complaint did not allege the citizenship of all parties. At that time, the Court noted that based on the jurisdictional allegations that were included in the complaint, it appeared likely that both Vázquez and Fisher & Shapiro were citizens of Illinois, which would prevent this Court from exercising federal diversity jurisdiction. Vázquez subsequently filed an Amended Complaint on July 15, 2013 asserting the same claims against J.P. Morgan but dropping Fisher & Shapiro as a defendant. On August 6, 2013, the Court dismissed the amended complaint without prejudice for lack of subject matter jurisdiction, this time noting that Vázquez did not include an explicit request for monetary damages. With no indication from Vázquez regarding how much money he was seeking to recover from J.P. Morgan, the Court could not determine that the lawsuit satisfied the amount in controversy requirement for diversity jurisdiction.

Vázquez filed the SAC, which is the subject of the present Motion, on August 26, 2013. In the SAC, Vázquez alleges that he became unemployed on March 31, 2008. (SAC ¶ 6, Dkt. No. 12.) As a result of his unemployment, Vázquez requested help from his mortgage servicer, Washington Mutual ("WaMu"), in late 2008. (*Id.* ¶ 7.) In response, WaMu offered him a forbearance agreement for the period March 2009 through August 2009. According to Vázquez,

he accepted the forbearance agreement on March 5, 2009 based on representations made by WaMu. (*Id.* ¶ 9.) Vázquez alleges that at a certain point WaMu was sold to J.P. Morgan. (*Id.* ¶ 13.)[2] Vázquez claims that he continued to comply with demands from WaMu and then J.P. Morgan, and that J.P. Morgan delayed filing for foreclosure against Vázquez to increase its fees and penalties against him. (*Id.* ¶¶ 14-19.) Vázquez further claims he became employed again in April 2011 and applied for a loan modification, but J.P. Morgan told him he could not get a modification because of his prior acceptance of the forbearance agreement. (*Id.* ¶ 20.) Vázquez also claims he complained to the Office of the Comptroller of the Currency ("OCC") in November 2012 about his treatment by J.P. Morgan, that the OCC "determined that indeed [Vázquez] was not treated fairly," and that he received $2,000 from J.P. Morgan "as an admission of guilt." (*Id.* ¶¶ 23-24, 36.)

Based on these allegations, Vázquez asserts two causes of action against J.P. Morgan. In Count I, Vázquez asserts a claim for "Fraudulent Misrepresentation or Concealment," alleging that in February 2009 WaMu made statements to him regarding his forbearance agreement that were false and untrue to induce him to sign the agreement. In Count II, Vázquez asserts a claim for violations of the ICFA based on allegations that J.P. Morgan did not fulfill its obligations during the forbearance agreement or when he applied for a loan modification.

In the Motion, J.P. Morgan raises three arguments challenging this Court's jurisdiction. First, J.P. Morgan argues that the SAC should be dismissed because Vázquez's claims are barred by the *Rooker-Feldman* doctrine. Second, J.P. Morgan contends that the Court should dismiss the SAC because it is barred by the doctrine of *res judicata*. And third, J.P. Morgan argues that the Court should dismiss the SAC because this case does not meet the requirements for the

---

[2] J.P. Morgan acknowledges that it acquired certain WaMu assets, including Vázquez's loan and the right to service it, on September 25, 2008. (Def. Memo. in Supp. of Mot. to Dismiss at 5, Dkt. No. 28.)

exercise of federal diversity jurisdiction. However, the Court finds that, on his third attempt, Vázquez has pleaded a complaint that survives a review for federal jurisdiction.

**DISCUSSION**

"Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute." *Evers v. Astrue*, 536 F.3d 651, 657 (7th Cir. 2008) (internal quotation omitted). In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). Because Vázquez is proceeding *pro se*, the Court holds the SAC to a "less stringent standard than formal pleadings drafted by lawyers, with the primary goal being to give *pro se* filings fair and meaningful consideration." *Philos Tech. Inc. v. Philos & D, Inc.*, 645 F.3d 851, 858 (7th Cir. 2011).

**I.**  *Res Judicata*

J.P. Morgan argues that the claims asserted in the SAC are barred by the doctrine of *res judicata*. Under that doctrine, when a final judgment has been entered on the merits of a case, "it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Highway J Citizens Grp. v. U.S. Dept. of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006) (quoting *Nevada v. U.S.*, 463 U.S. 110, 129-30 (1983)). "Because an Illinois state court rendered the . . . order at issue, we must apply Illinois law to determine whether *res judicata* bars [the] claims." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir. 1999). Under Illinois law,

the doctrine of *res judicata* applies when: (1) the identity of the parties or their privies in the two suits are the same; (2) the causes of action in the prior and current suit are the same; and (3) there has been a final judgment on the merits in the prior suit. *Rockford Mut. Ins. Co. v. Amerisure Ins. Co. and Michigan Mut. Ins. Co.*, 925 F.2d 193, 195 (7th Cir. 1991).

In this case, *res judicata* does not bar Vazquez's suit because there has been no final judgment on the merits in the Foreclosure Action. While the State Court has entered an order of foreclosure, such an order is not considered a final judgment under Illinois law. As the Illinois Supreme Court has explained:

> It is well settled that a judgment ordering the foreclosure of mortgage is not final and appealable until the trial court enters an order approving the sale and directing the distribution. The reason such a judgment is not final and appealable is because it does not dispose of all issues between the parties and it does not terminate the litigation. Specifically, although a judgment of foreclosure is final as to the matters it adjudicates, a judgment foreclosing a mortgage, or a lien, determines fewer than all the rights and liabilities in issue because the trial court has still to enter a subsequent order approving the foreclosure sale and directing distribution. Accordingly, it is the order confirming the sale, rather than the judgment of foreclosure, that operates as the final and appealable order in a foreclosure case.

*EMC Mortg. Corp. v. Kemp*, 982 N.E.2d 152, 154 (Ill. 2012) (citations omitted)*; see also J.P. Morgan Chase Bank v. Fankhauser*, 890 N.E.2d 592, 599 (Ill. App. 2d Dist. 2008) (holding that a final judgment in a foreclosure action cannot occur until the court confirms a sale of the property).

At this point in the Foreclosure Action, there has been no judicial sale and thus no order confirming a judicial sale. The judgment ordering foreclosure and sale entered in the Foreclosure Action reflects this fact, stating that the State Court "shall conduct a hearing to confirm the sale" of the foreclosed property once a purchaser is identified and that once this hearing is held the State Court "shall then enter an order confirming the sale." (Def. Memo. in Supp. of Mot. to Dismiss Ex. D at 7, Dkt. No. 28.) Because only a judgment of foreclosure has been entered in the

5

Foreclosure Action, and not a final order confirming sale of the subject property, *res judicata* does not apply at this time. *See Garavito v. Suntrust Mortg., Inc.*, No. 11-cv-6056, 2013 WL 856127, at *5 (N.D. Ill. Mar. 6, 2013).

Despite the standard set forth in *Kemp*, J.P. Morgan nonetheless urges this Court to consider the judgment of foreclosure as a final judgment for *res judicata* purposes. In support of this argument, J.P. Morgan cites *Spencer v. Mortgage Acceptance Corporation*, No. 05 C 356, 2006 WL 1302413 (N.D. Ill. May 4, 2006), which held that an Illinois state court foreclosure judgment constituted "a final judgment on the merits of the case" that barred the mortgagee's subsequent federal action under the Truth In Lending Act. *Id.* at *5. However, in reaching that conclusion, the *Spencer* court relied upon *Joliet Federal Saving & Loan Association v. O'Hare International Bank*, 299 N.E.2d 350 (3rd Dist. 1973), which noted, in *dicta*, that "[i]f a decree of foreclosure is entered in this case, then a final appealable order will have been entered." *Id.* at 351. The *Spencer* court did not mention the Illinois Supreme Court's decision in *Kemp* or any of the many other decisions post-dating *Joliet Federal* that have held that a foreclosure judgment is not a final and appealable order. Because Illinois courts have firmly established that a judgment of foreclosure does not constitute a final judgment on the merits, the Court does not consider *Spencer* persuasive for purposes of the instant Motion.

**II.     *Rooker-Feldman* Doctrine**

J.P. Morgan also argues that this Court should decline jurisdiction over this case based on the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine derives its name from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It holds that "the lower federal courts lack subject-matter jurisdiction over actions that seek review of state-court judgments; only the

United States Supreme Court has authority to review state judgments." *Dookeran v. Cnty. of Cook, Ill.*, 719 F.3d 570, 574-75 (7th Cir. 2013). *Rooker-Feldman* is a narrow doctrine that applies to "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* If the injury about which the plaintiff complains resulted from, or is inextricably intertwined with, a state-court judgment, then lower federal courts cannot hear the claim. *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532-33 (7th Cir. 2004).

J.P. Morgan asserts that Vázquez's claims are barred by the *Rooker-Feldman* doctrine because the damages that he seeks are inextricably intertwined with the foreclosure order entered by the State Court. But the *Rooker-Feldman* doctrine only applies "where 'the losing party in state court filed suit in federal court *after the state proceedings ended*,' therefore, an interlocutory ruling does not evoke the doctrine or preclude federal jurisdiction." *TruServ Corp. v. Flegles, Ins.*, 419 F.3d 584, 591 (7th Cir. 2005) (emphasis in original) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)). As discussed above, a judgment ordering the foreclosure of a mortgage is not a final judgment under Illinois law. *EMC Mortg. Corp.*, 982 N.E.2d at 154. Thus, the *Rooker-Feldman* doctrine does not apply here, as Vázquez filed his complaint after an order of foreclosure but before the entry of an order approving the sale of his property and directing the distribution of the resulting funds. *See, e.g., Garavit*, 2013 WL 856127 at *5; *In re Hodges*, 350 B.R. 796, 803 (Bankr. N.D. Ill. 2006).

### III. Diversity Jurisdiction

Finally, J.P. Morgan seeks dismissal of Vasquez's lawsuit on the ground that it does not meet the requirements for federal diversity jurisdiction. A litigant may invoke diversity jurisdiction in federal court only when the matter in controversy exceeds the sum or value of

7

$75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). "Generally the amount in controversy claimed by a plaintiff in good faith will be determinative on the issue of jurisdictional amount, unless it appears to a legal certainty that the claim is for less than that required by the rule." *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 237 (7th Cir. 1995) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). However, "if the court's jurisdiction is challenged as a factual matter by either the court or the opposing party, the party invoking the jurisdiction bears the burden of supporting its jurisdictional allegations by 'competent proof.'" *Id.* (quoting *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

In the SAC, Vázquez lists only a few categories of compensatory damages and together they amount to less than $75,000. Specifically, Vázquez alleges that he made a mortgage payment of $2,959.61 in January 2009 in reliance on alleged misrepresentations by WaMu. (SAC ¶ 8, Dkt. No. 12.) He further alleges that he paid another $1,506.22 in February 2009, and $726.70 monthly from December 2009 through May 2010—or $4,360.20—based on a "demand" by J.P. Morgan. (*Id.* ¶¶ 8, 16-17). Vázquez also alleges that as a result of unfair accounting by J.P. Morgan, he was audited by the IRS and charged with a $1,392.47 tax deficiency. (*Id.* ¶ 53(o).) These allegations of damages total $10,218.50. Although Vázquez alleges that he "is told fees, interests [*sic*] and penalties in this foreclosure case are over $90,000 on a $154,900 mortgage" (*id.* ¶ 22), he never alleges what part of this amount he considers to be in controversy. Vázquez also makes general allegations regarding his "lost time and opportunity costs" and his inability to pursue other means of saving his home (*see id.* ¶ 45), but he fails to identify particular amounts associated with these alleged costs.[3]

---

[3] At a hearing on the Motion, Vázquez stated that he is seeking compensatory damages totaling $154,900, which represents the amount of the original mortgage on the subject property plus $40,000 in costs.

However, Vázquez's prayer for relief asks the Court to grant not just compensatory damages but also "punitive damages, equitable relief, attorneys' fees, court costs, and all other relief this Court deems appropriate." (*Id.* ¶ 34.) When evaluating whether a suit exceeds the amount-in-controversy threshold, courts consider all damages available to a plaintiff, including punitive damages. *See Oshana v. Coca–Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006). "Where punitive damages are required to satisfy the jurisdictional amount in a diversity case, a two-part inquiry is necessary. The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear 'beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount.'" *Cadek v. Great Lakes Dragway, Inc.*, 58 F.3d 1209, 1211-12 (7th Cir. 1995) (quoting *Risse v. Woodard*, 491 F.2d 1170, 1173 (7th Cir. 1974)).

Vázquez satisfies both parts of the two-step inquiry. First, the ICFA provides for the recovery of punitive damages, *see Oshana*, 471 F.3d at 512, as does the Illinois common law of fraudulent misrepresentation. *See Carter v. Mueller*, 457 N.E.2d 1335, 1342-43 (1st Dist. 1983). Second, in order to satisfy the amount in controversy requirement, Vázquez would need to be awarded punitive damages in an amount slightly under $65,000 along with the $10,218.50 in compensatory damages pleaded in his complaint. The Supreme Court has set constitutional limits on the ratio of punitive damages to compensatory damages that may permissibly be awarded. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 410 (2003). While there is no precise

---

Vázquez did not articulate a legal theory under which he could be awarded these damages, nor has the Court identified such a theory of recovery. Because Vázquez has failed to provide any competent proof that he is entitled to these damages, the Court does not consider them in its analysis. *See Atteberry v. Esurance Ins. Svcs.*, 473 F.Supp.2d 876 (N.D. Ill. 2007) (asserted damages amounts that are unsupported by the asserted cause of action cannot satisfy the amount in controversy requirement). Although Vázquez ultimately may be able to establish that he is entitled to recover some portion of these amounts as damages, for purposes of the Motion, the Court uses the more conservative figure of $10,218.50. As discussed below, Vázquez meets the jurisdictional requirement even using the more conservative amount.

mathematical formula to determine an appropriate ratio, the Supreme Court has held that "single-digit multipliers are more likely to comport with due process." *Philip Morris USA v. Williams*, 549 U.S. 346, 351 (2007) (citing *State Farm*, 538 U.S. at 425)). Here, a punitive damage award that would allow Vázquez to satisfy the amount in controversy requirement would be approximately 6.5 times the amount of compensatory damages pleaded in the SAC. Because this amount of punitive damages would not necessarily violate due process, the Court cannot say beyond a legal certainty that a potential punitive damage award, combined with Vázquez's currently pleaded compensatory damages, would not exceed the $75,000 minimum. Therefore, the Court finds that the amount in controversy requirement is satisfied.

## CONCLUSION

For the foregoing reasons, the Court denies J.P. Morgan's Motion. The denial is without prejudice to J.P. Morgan asserting a *res judicata* defense at a later date, if and when the State Court enters an order approving the sale of the subject property.

ENTERED:

Dated: September 8, 2014

Andrea R. Wood
United States District Judge

10